UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
SYLVESTER J. BRITTO, JR.,      )
                               )
        Plaintiff,             )
                               )
    v.                         )  C.A. No. 17-234 WES
                               )
ST. JOSEPH HEALTH SERVICES OF  )
RHODE ISLAND, alias; PROSPECT  )
CHARTERCARE SJHSRI, LLC, alias;)
PROSPECT CHARTERCARE, LLC, alias;)
SANDRA NASTARI, alias; and ADDY)
KANE, alias,                   )
                               )
        Defendants.            )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

This case arises from Sylvester J. Britto's ("Plaintiff") suit against his former employers for damages stemming from their alleged violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws §§ 28-5-1, et seq. ("FEPA"), and the Rhode Island Civil Rights Act, R.I. Gen. Laws §§ 42-112-1, et seq. ("RICRA"). Before the Court is Defendants Prospect CharterCare, LLC, Prospect CharterCare

1

SJHSRI,[1] LLC, Sandra Nastari, and Addy Kane's (collectively, "Defendants") Motion To Dismiss Proceedings and Compel Arbitration ("Motion"). (ECF No. 17). For the reasons set forth below, the Motion is GRANTED.

I. Background

Roger Williams Medical Center ("RWMC") hired Plaintiff in March of 1987. (Pl.'s Mem. in Supp. of Obj. to Defs.' Mot. ("Pl.'s Mem.") 2, ECF No. 23-1.) In 2014, Prospect purchased RWMC and became Plaintiff's employer. (Id. at 2-3.) During the transition, Prospect gave Plaintiff an Offer Letter ("Offer Letter"), Arbitration Agreement ("Agreement"), and the Company's Code of Conduct ("Code of Conduct"). (Mem. in Supp. of Defs.' Mot. ("Defs.' Mem.") 2-3, ECF No. 17-1; Pl.'s Mem. 3.) As a required condition of employment, Plaintiff signed and returned each form. (Pl.'s Mem. 4.) This case arises from the termination of Plaintiff's employment in January 2015, about which he alleges violations of the ADEA, Title VII, FEPA, and RICRA. (Compl. 3, ECF No. 1.)

II. Legal Standard

This Court applies a summary-judgment standard to a motion to compel arbitration. See Proulx v. Brookdale Living Communities

---

[1] For purposes of this Order, this Court refers to the "Prospect CharterCare" entity-Defendants, as Plaintiff does, collectively as "Prospect."

2

Inc., 88 F. Supp. 3d 27, 29 (D.R.I. 2015) ("While the First Circuit has not yet addressed the issue, other courts have applied a summary judgment standard to a motion to compel arbitration."); see also, e.g., Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 & n.9 (3d Cir. 1980); Ouadani v. Dynamex Operations E., LLC, No. CV 16-12036-PBS, 2017 WL 1948522, at *1 n.2 (D. Mass. May 10, 2017); Boulet v. Bangor Securities, Inc., 324 F. Supp. 2d 120, 123-124 (D. Me. 2004). The Court reviews the evidence in the light most favorable to – and drawing all reasonable inferences in favor of - the nonmoving party. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

III. Discussion

The Federal Arbitration Act ("FAA") governs written arbitration agreements. See 9 U.S.C. § 2. Under the FAA, an arbitration agreement must be enforced where a valid, written agreement exists and the claims are made within its scope; indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). The "liberal federal policy favoring arbitration agreements," id. at 24, requires that the Court "rigorously enforce agreements to arbitrate," Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985).

A court must determine whether the party seeking to compel arbitration can show that "[(1)] a valid agreement to arbitrate exists, [(2)] that the movant is entitled to invoke the arbitration clause, [(3)] that the other party is bound by that clause, and [(4)] that the claim asserted comes within the clauses' scope." Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003)).

Whether a valid arbitration agreement exists is a question of state contract law. See Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005). In Rhode Island, a valid contract requires "competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." Voccola v. Forte, 139 A.3d 404, 414 (R.I. 2016) (quoting DeLuca v. City of Cranston, 22 A.3d 382, 384 (R.I. 2011) (mem.)). Rhode Island uses the "bargained-for exchange test" for evaluating consideration, which "consists of 'some legal right acquired by the promisor in consideration of his promise, or forborne by the promisee in consideration of such promise.'" DeAngelis v. DeAngelis, 923 A.2d 1274, 1279 (R.I. 2007) (quoting Darcey v. Darcey, 71 A. 595, 597 (R.I. 1909)). Something is bargained for if "it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." Id. (quoting Filippi v. Filippi, 818 A.2d 608, 624 (R.I. 2003)).

4

The mutuality of obligation is destroyed, however, where one of the promises exchanged is illusory, i.e., "when the promised act is conditional on the occurrence of a future event within the control of the promisor." Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 8 (1st Cir. 1994); see also Wells Fargo Bank, N.A. v. Wasserman, 893 F. Supp. 2d 310, 317 (D.R.I. 2012).

This Court must decide whether there is a valid and enforceable arbitration agreement. Defendants rely on an executed Agreement signed by Plaintiff in 2014. (Defs.' Mem. Ex. 1 at 5, ECF No. 17-2.) The Agreement's language requires that "any controversy, claim or dispute between [Plaintiff] and [Prospect] . . . relating to or arising out of [Plaintiff's] employment or the cessation of that employment will be submitted to final and binding arbitration." (Id.) The Agreement covers "all employment-related claims including, but not limited to, claims for unpaid wages, breach of contracts, torts, violation of public policy, discrimination, harassment, or any other employment-related claim under any state or federal statutes or laws relating to an employee's relationship with his/her employer." (Id.) And it concludes with the pronouncement that, "[b]y agreeing to this binding mutual arbitration provision, both [Plaintiff] and [Prospect] give up all rights to a trial by jury." (Id.)

5

A. Mutual Promise To Arbitrate

Complicating matters here, the Offer Letter reserved Defendants' right to "change the terms of [Plaintiff's] employment . . . at any time." (Offer Letter, id. at 8.) Neither the First Circuit nor the Rhode Island Supreme Court has addressed whether language that reserves the right to an employer to unilaterally change the terms and conditions of employment renders an arbitration agreement illusory and therefore invalid. To suggest that it does, Plaintiff cites a recent decision from this district, Conduragis v. Prospect CharterCare, LLC, C.A. No. 17-272-JJM-PAS, 2017 WL 5997417 (D.R.I. Dec. 1, 2017). There, the court broadly construed an arbitration agreement and the offer letter together, in part because it determined that the arbitration agreement was a term of employment, as referenced in the offer letter, and was never meant to be read alone. Id. at *3. To this end, the offer letter's language allowed Prospect to "change the terms of [Mr. Conduragis'] employment . . . at any time," which the court held rendered the mutual promise to arbitrate illusory and unenforceable. Id. The court also deemed continued employment insufficient consideration. Id.

In concluding that the mutual promise to arbitrate was illusory, Judge McConnell cited cases in which courts refused to enforce agreements where "employers embed[ded] arbitration agreements in employee handbooks, reserving the right to alter any

6

term of the handbook." Id. at *3 (first citing Domenichetti v. Salter Sch., LLC, No. 12-11311-FDS, 2013 WL 1748402, at *6-7 (D. Mass. Apr. 19, 2013); then citing Canales v. Univ. of Phx., Inc., 854 F. Supp. 2d 119, 124-25 (D. Me. 2012); and then citing Carey v. 24 Hour Fitness, USA, Inc., 669 F.3d 202, 206 (5th Cir. 2012)). One such case was Domenichetti, in which the court deemed an arbitration agreement that appeared "within the body of the [employee] [h]andbook" illusory because it neither appeared on a separate page nor required an additional signature. 2013 WL 1748402, at *6. With nothing to distinguish the handbook from the agreement, the court read them as one. Id. Notably, however, the court construed two other forms – the "Conflict of Interest and Alcohol Abuse Policies" – which appeared in a different format and required an added signature, as separate from the handbook and thus disconnected from its reservation of rights. Id. at *6.

In the instant case, the Agreement - just like the Conflict of Interest and Alcohol Abuse Policies in Domenichetti - was a separate document that required a separate signature and, consistent with Domenichetti's holding, the Offer Letter's reservation of rights does not cover the Agreement. See id. The relevant facts, either undisputed or viewed in the light most

7

favorable to Plaintiff, are as follows.[2] In June 2014, Anne Corbo (a Prospect Employee) led a brief meeting for Plaintiff and three co-workers in which Plaintiff received an Offer Letter explaining that he would become an employee of SJHSRI on or about June 20, 2014. (Pl.'s Mem. 2-3.) As a required employment condition, however, Plaintiff received and was required to sign two stand-alone documents, the Agreement and the Code of Business Ethics. (Id.) Accordingly, the mutual promise to arbitrate is supported by sufficient consideration and Prospect's employment of Plaintiff, as discussed below, was not rendered illusory. Accord Brackett v. Gen. Dynamics Armament, Civil No. 10-176-P-H, 2010 WL 2628525, at *2-3 (D. Me. June 25, 2010) (rejecting plaintiff's argument that, because the employee handbook permitted employer to alter its policies, the promise to arbitrate was unconscionable). This conclusion is reinforced by several other courts, which suggest that a preservation of rights clause does not invalidate a separate arbitration agreement. See, e.g., Snedden v. Perkins & Marie Callender's Inc., C.A. No. 1:16-cv-668, 2016 WL 7049254, at *3 (S.D. Ohio Dec. 5, 2016); Martinez v. Utilimap Corp., C.A. No. 3:14-cv-310-JPG-DGW, 2015 WL 3932151, at *5 (S.D. Ill. June 25, 2015); White v. Four B Corp., C.A. No. 11-2416-JWL, 2011 WL

---

[2] Federal courts, pursuant to the FAA, refer disputes to arbitration as a matter of course. See KPMG LLP v. Cocchi, 565 U.S. 18, 19 (2011) (per curiam).

8

4688843, at *3 (D. Kan. Oct. 5, 2011); In re 24R Inc., 324 S.W.3d 564, 567-68 (Tex. 2010).

B. Continued Employment is Sufficient Consideration

However, even if the Agreement and Offer Letter are read together, the Agreement remains enforceable because it was supported by independent valid consideration: Plaintiff's continued employment. The Rhode Island Supreme Court has held that continued employment is sufficient consideration to enforce an agreement: "[t]he continuation of [plaintiff's] employment was sufficient consideration. . . . [Plaintiff] had the option of continuing on [defendant-employer's] terms or leaving the company. He chose the former." Oken v. Nat'l Chain Co., 424 A.2d 234, 237 (R.I. 1981). And the First Circuit, applying Puerto Rico law,[3] has held that continued employment suffices for consideration to enforce an arbitration agreement. See Soto, 642 F.3d at 75-76. In Soto, the court highlighted that in exchange for the employee's agreement to arbitrate, the employer did not invoke its right to terminate her employment – "a right that it could have exercised, even without cause." Id. at 75. Continued employment, under the new arrangement, was not obligatory on the employer and, therefore, it was sufficient consideration to enforce the agreement. Id.

---

[3] Puerto Rico uses the same standard as Rhode Island, i.e., mutual consideration requires a bargained-for exchange between the parties, which renders enforceable the arbitration agreement. See Soto v. State Indus. Prods., 642 F.3d 67, 75 (1st Cir. 2011).

(finding that, because continued employment was conditioned on the employee signing the agreement, it "dispel[led] any possible doubt over whether the consideration received was real").

Here, Plaintiff's argument that Prospect's offer of "continued employment is insufficient consideration," which principally relies on Conduragis, comes up short. 2017 WL 5997417, at *3. This Court has considered the cases on which the Conduragis court relied, including a Rhode Island Superior Court case, D. Miguel & Son Co. v. Barbosa, No. C.A. 84-3186, 1985 WL 663146 (R.I. Super. Ct. Mar. 11, 1985), but finds them unpersuasive in the face of Oken, Soto, and numerous other cases not mentioned in Conduragis, including cases of this Court, which indicate that continued employment constitutes sufficient consideration. See, e.g., R.J. Carbone Co. v. Regan, 582 F. Supp. 2d 220, 224 (D.R.I. 2008) (holding that continued employment is sufficient consideration in non-compete-agreement context); Nestle Food Co. v. Miller, 836 F. Supp. 69, 77 (D.R.I. 1993) ("[C]ontinuation of [a salesman's] employment constitutes adequate consideration [for the non-compete agreement]."); Gen. Signal Corp. v. Primary Flow Signal, Inc., Civ. A. No. 85-0471B, 1987 WL 147798, at *4 (D.R.I. July 27, 1987) ("The Rhode Island Supreme Court has provided a substantial clue that it would deem continued employment sufficient consideration when it addressed an analogous question

regarding modification of an employment contract.") (citing Oken, 424 A.2d at 234).

Here, Defendants explicitly offered Plaintiff continued employment, acceptance of which required Plaintiff to sign and return the Agreement, Offer Letter, and Code of Conduct. Consistent with Rhode Island's bargained-for-exchange test, Plaintiff agreed to continue to work in exchange for Defendants' promise to continue to employ and compensate him for his services. See DeAngelis, 923 A.2d at 1279. This is consideration sufficient to render the Agreement enforceable.

IV. Conclusion

Accordingly, Defendants' Motion To Dismiss and Compel Arbitration (ECF No. 17) is GRANTED and the case is dismissed without prejudice. In light of this Order and the Court's decision not to certify question, the Court DENIES as moot Defendants' Motion To Submit an Amended Memorandum Regarding Certification (ECF No. 30). Also DENIED as moot is St. Joseph Health Services of Rhode Island's ("SJHSRI") renewed Motion To Dismiss (ECF No. 20) in light of Plaintiff's Voluntary Dismissal (ECF No. 21) of SJHSRI, entered on December 12, 2017.

IT IS SO ORDERED.

/s/ W. Smith
William E. Smith
Chief Judge
Date: April 23, 2018

11